UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

___

DONOVAN BYFIELD,

                              Plaintiff,

                                                                                                        Case # 12-CV-6131-FPG

v.

                                                                                                             DECISION AND ORDER

CHAPMAN, et al.,

                              Defendants.

___

On September 17, 2015, Defendants filed a Motion *in Limine* to preclude Plaintiff from testifying that he observed blood in his urine following an alleged beating by prison officials. ECF No. 48, at 21. The Court held a pretrial conference on October 14, 2015 where the parties clarified their positions on the issue (ECF No. 52), and Defendants then submitted supplemental briefing (ECF No. 51).

## BACKGROUND

Plaintiff brought this action *pro se* against prison officials under 42 U.S.C. § 1983. He alleges that on February 16, 2011, the officials punched and kicked him repeatedly in the face and body in addition to striking him on the back with a baton. At a deposition, Plaintiff alleged that five days after the beating, on February 21, 2011, he saw blood in his urine for the first time. Medical records confirm that Plaintiff did have blood in his urine. He continued to suffer from this condition for about a month. Plaintiff wishes to testify at trial as to his observations regarding the blood in his urine.

Defendants contend that consistent with most cases concerning medical conditions, Plaintiff needs an expert to testify that such a beating could cause blood to be in his urine. Plaintiff will not have such an expert at trial. Thus, in their Motion *in Limine*, Defendants argue that Plaintiff should not be able to testify about his observation of blood because he is not able to properly link it to the act in question. Accordingly, any reference to the blood is "probative of nothing but is highly prejudicial." ECF No. 51, at 5. Defendants are arguing, in essence, that Plaintiff's testimony would be irrelevant under Federal Rule of Evidence 401 without expert medical testimony as to causation, and to the extent it is relevant, it is unfairly prejudicial under Federal Rule of Evidence 403.

Notably, Defendants have retained an expert to provide an explanation as to why blood was present in Plaintiff's urine. After reviewing Plaintiff's medical records, the expert determined that the cause of the bleeding was actually an unrelated "mild benign prostatic hypertrophy." ECF No. 48, at 22. Defendants argue that their expert confirms that there are multiple potential causes of the bleeding, and thus it is even more necessary for Plaintiff to produce an expert to testify as to the cause of blood in his urine.

The Court has assessed these arguments and determines as follows.

## DISCUSSION

Defendants are correct that in general, a plaintiff who has been physically injured must offer expert medical testimony to show the cause of the injury. *See Fane v. Zimmer, Inc.*, 927 F.2d 124, 131 (2d Cir. 1991) (quoting *Meiselman v. Crown Heights Hospital*, 285 N.Y. 389, 396 (1941). This is because "the medical effect on the human system of the infliction of injuries is generally not within the sphere of the common knowledge of the lay person," so the jury is not capable, on its own, of determining the injury's cause. *Barnes v. Anderson*, 202 F.3d 150, 159 (2d Cir. 1999) (quotation and citation omitted). Defendants' argument is thus premised on the

2

notion that the blood in Plaintiff's urine is a condition that the jury is not capable, on its own, of determining causation.

The converse of the general requirement for expert testimony is that when ordinary lay persons are capable themselves of understanding the evidence and drawing the necessary inferences, an expert is not required to opine on the cause of injury. *See United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991). Stated differently, when the subject-matter is less complex, jurors may draw upon their own everyday experiences and observations to comprehend the facts and come to their own conclusions as to causation. *See Fane*, 927 F.2d at 131. For example, in a frequently-cited New York Court of Appeals decision, the court determined that the plaintiff did not need an expert to show that her vomiting was caused by her ingestion of a soft drink containing an insect. *See Mitchell v. Coca-Cola Bottling Co.* 200, N.Y.S.2d 478, 479–80 (1960). The court found that the jury could determine on its own that drinking a soft drink with a "revolting foreign substance" was capable of causing nausea. *Id.* at 80.

With these principles in mind, Defendants have attempted to show that Plaintiff's injury is the sort of complex injury with multiple potential causes that is not within the common ken of an ordinary juror. The Court will briefly examine the four cases Defendants rely on to support this argument.

The Defendants start with *Barnes*, which is also cited above. In *Barnes*, the Second Circuit found that the plaintiff needed to produce an expert to show that court security officers caused her miscarriage. *See Barnes*, 202 F.3d at 152–53, 60. The relevant facts are as follows: During a "raucous" day in court, court security officers allegedly twisted the plaintiff's arm, placed a knee on her back, and then hit her in the back. *Id.* at 152–53. About two months later in an apparently unrelated incident, the plaintiff was attacked by two women on the street who choked her, pulled her to the ground, and kicked her in the back, legs, and arms. *Id.* at 153. The

3

attack caused the plaintiff to vomit twice and experience abdominal cramps. *Id.* She needed to be taken by ambulance to the hospital. *Id.*

Plaintiff subsequently suffered a miscarriage and sued the court security officers for causing it. *See id.* at 153. She did not, however, produce admissible expert testimony at trial showing that the actions by the court security officers caused her miscarriage. *See id.* at 154. Understandably, the Second Circuit found that the plaintiff needed an expert on these facts. It found that a miscarriage "is the sort of complex injury for which expert medical evidence of causation is required," and, more importantly, "[the plaintiff] was physically assaulted by others subsequent to the incident at [court]." *Id.* at 160. Given this obvious potential supervening cause for the plaintiff's injury—she was brutally attacked on the street before she miscarried—causation was in serious question. There is clearly not such an obvious supervening cause in the case at hand.

The Defendants also cite *Wills v. Amerada Hess Corp.*, 379 F.3d 32 (2d Cir. 2004). In *Wills*, a seaman died from complications due to cancer. *Id.* at 36–37. His wife sued the shipping company on the theory that her husband's exposure to benzene on the ship caused his "squamous cell carcinoma." *Id.* at 37. She also attempted to show causation with a second "controversial" theory that even a miniscule exposure to such toxin could cause cancer. *Id.* at 37–38. The Second Circuit found that because the subject matter was toxic exposure leading to squamous cell carcinoma, and because there was also a strong possibility that the decedent's twenty-year smoking and drinking habit caused the cancer, his wife needed an expert to establish causation at trial. *Id.* at 39–40, 46. Again, *Wills* is a case involving a complex injury and an obvious potential supervening cause.

The Defendants' final two cases are *Donovan v. Centerpulse Spine Tech Inc.*, 416 F. App'x 104 (2d Cir. 2011) and *Eisemann v. Greene*, 205 F.3d 1322 (2d Cir. 2000). *Donovan* is a

4

products liability case where plaintiff alleged that a defect in a screw installed into her spine caused her pain. *See Donovan*, 416 F. App'x at 105–106. Given that the subject matter was products liability, and given that the plaintiff's pain could have easily been caused by the underlying condition that required the screw, the Second Circuit found that the plaintiff needed an expert to establish causation. *See id.* at 106. In *Eisemann*, the plaintiff alleged that a routine gynecological examination caused an injury to her tailbone. *Eisemann*, 205 F.3d at 1322, at *1. After the plaintiff's own expert reneged on an agreement to testify as to causation, the Second Circuit found that the plaintiff could not survive summary judgment. *Id.* at *2–3.

These are the cases Defendants use in supporting their Motion *in Limine*. In other words, these four cases—with complex injuries and patently obvious supervening causes—are the cases Defendants use to support their argument that Plaintiff's own observation of blood in his urine is the sort of injury that the jury cannot infer was caused by the beating.

The Court finds that there is more persuasive authority. In *Barnes*, the Second Circuit observed that civil actions brought under § 1983 are analogous to common law tort actions. *Barnes*, 202 F.3d at 158. Thus, state court cases are illuminating on issues like causation. *See id.* State court cases sounding in tort have been clear that "especially where one is testifying about his own physical condition," the cause of injury is an inference a lay person may be able to draw. *See State v. Orsini*, 155 Conn. 367, 372 (1967) (observing that plaintiff could testify that she herself was pregnant). A plaintiff does not need an expert to testify, for instance, that a blow to the face caused a bruise or an eye's "ruptured globe." *See Shaw v. Tague,* 257 N.Y. 193, 195 (1931); *Parrott v. Pelusio*, 410 N.Y.S.2d 190, 191 (1978). In a more dated example that is still illustrative, "It is a matter of common knowledge or belief that hair may grow white in a single night from sudden fears." *Shaw*, 257 N.Y. at 195. In simple terms, for injuries that are not

"remote and unusual [like] cancer or tuberculosis," the jury can simply draw on its everyday experience to determine the cause of the injury. *Id.* at 195–96.

In one illuminating Second Circuit case, the plaintiff worked on an underground railroad in New York City. *See Ulfik v. Metro-N. Commuter R.R.*, 77 F.3d 54, 55 (2d Cir. 1996). He alleged that one day at work he and two other workers inhaled noxious fumes. *Id.* at 55–56. He became dizzy, got a headache, and went to see a doctor who ran some tests. *Id.* at 56. The tests ultimately failed to reveal any problems. *Id.* Eight days after inhaling the fumes, the plaintiff became dizzy at work and fell down a flight of stairs. *Id.*

At trial, plaintiff did not produce an expert to testify that the paint fumes may have caused plaintiff's dizziness and fall. *Id.* at 57. At the close of Plaintiff's case-in-chief, the district court granted judgment as a matter of law in part because Plaintiff had not produced such an expert and thus there was insufficient on causation. *Id.*

The Second Circuit reversed. *Id.* at 60. It found that "the trier of fact could reasonably determine, without expert testimony, that prolonged exposure to paint fumes would cause headache, nausea, and dizziness." *Id.* at 59–60. Accordingly, the lay testimony Plaintiff offered as to the cause of his dizziness was not only admissible, but sufficient for the jury to assess causation. *Id.*

It is true that *Ulfik* was a case brought under the Federal Employers' Liability Act, so the standard of proof concerning causation was relaxed. *Id.* at 58. However, given *Ulfik*'s easy comparison to the case at hand, and given that the Second Circuit determined that the district court abused its discretion in excluding lay testimony about the dizziness, the Court finds *Ulfik* applicable here. *Id.* at 57. Just as in *Ulfik*, Plaintiff was subjected to a harmful event and, days later, suffered from a physical injury directly related to that event. Accordingly, just as in *Ulfik*, Plaintiff does not need expert testimony as to causation just so he can speak about his personal

6

observations of blood in his urine. The subject matter here is not complex like cancer, a spinal injury, or even a miscarriage. The subject matter is, simply stated, blood exiting the body after a beating to Plaintiff's body. The jury is free to assess whether that blood was caused by the beating or by, as Defendants' expert maintains, an underlying condition.

Defendants argue that this analysis changes because they have put forward an expert who believes that, after reviewing Plaintiff's medical records, there is another potential source for the blood, namely prostatic hypertrophy. ECF No. 48, at 22. Thus, just like the seaman whose cancer was potentially caused by his twenty-year smoking habit, this injury is more complex because it is borne out of "multiple etiologies." ECF No. 51, at 4.

I disagree. To reference an example cited above, a jury would still be able to assess whether a plaintiff's "hair [grew] white in a single night" because of "sudden fears" even if the defendant, for instance, hired an expert to review plaintiff's birth certificate and the expert determined that the plaintiff was middle-aged. *Shaw*, 257 N.Y. at 195. A jury would still be able to assess whether a tooth fell out because plaintiff was punched days earlier even if the defendant, for instance, hired an expert to review plaintiff's dental records and the expert determined that the tooth was damaged much earlier. Likewise here, the jury is able to assess on its own whether the urine in Plaintiff's blood was caused by the beating he suffered a few days before or by a possible underlying condition.

In short, Plaintiff will be allowed to testify that he observed what appeared to be blood in his urine or that his urine was otherwise discolored. He is not an expert, so he cannot himself testify that the discoloration was actually blood. The Defendants' disagreement at to the source of the blood can be addressed on cross-examination.

CONCLUSION

For the foregoing reasons, Defendants' Motion *in Limine* (ECF No. 48, at 21) to preclude Plaintiff from testifying about or otherwise referencing his observation of blood in his urine is DENIED.

IT IS SO ORDERED.

DATED:   Rochester, New York
         October 22, 2015

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court