UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DONOVAN BYFIELD,

                Plaintiff,

                                          Case # 12-CV-6131-FPG

v.

                                          DECISION AND ORDER

CHAPMAN, et al.,

                Defendants.

---

By Decision and Order dated October 22, 2015 (ECF No. 54), I denied Defendants' pretrial Motion *in Limine* (ECF No. 48, at 21). The Motion *in Limine* attempted to preclude Plaintiff, a prisoner proceeding *pro se* under 42 U.S.C § 1983, from testifying about or otherwise referencing his own observation of blood in his urine following an alleged beating by prison officials. Defendants have now filed a Motion for Reconsideration (ECF No. 55), asking the Court to reverse its denial of their Motion *in Limine*.

## BACKGROUND

Motions for reconsideration are governed by Local Rule of Civil Procedure 7(d)(3) and Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. The standard for granting a motion for reconsideration is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation omitted). "A motion for reconsideration should be granted only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or

prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation and internal quotation marks omitted); *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). It is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc.*, 684 F.3d at 52 (citation omitted). Accordingly, on a motion for reconsideration, a party may not merely offer the same "arguments already briefed, considered and decided," nor may a party "advance new facts, issues or arguments not previously presented to the Court." *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990).

The Court assumes that because Defendants did not identify a change in law and admit that they are "not present[ing] any substantive new facts to the Court," the Motion for Reconsideration is based on an allegation that the Court committed clear error in denying their Motion *in Limine*. Defendants imply that the clear error stems from the Court's misstatement of the relevant standard, namely, the standard as to when a party may offer lay testimony about the cause of an injury. In Defendants' words, "the standard for allowing lay testimony is not, as the Court held, generally based on complexity, but rather specifically whether causation is 'obvious, widely known and not subject to scientific dispute.'" ECF No. 55-2, at 1.

Of course, Defendants must walk a fine line in arguing that the Court misstated the relevant standard because in reciting the standard, the Court relied principally on the same case that the Defendants relied on in supplemental briefing to their Motion *in Limine*. *See Barnes v. Anderson*, 202 F.3d 150 (2d Cir. 1999). The argument further loses force upon a reading of *Barnes*, where the Second Circuit also casted the standard in terms of complexity: "[A miscarriage] is the sort of complex injury for which expert medical evidence of causation is required." *Barnes*, 202 F.3d at 160. Notably, the Court already provided this exact same quote

2

from *Barnes* to the Defendants in its original Decision and Order. ECF No. 54, at 4. In short, as this Court and the Second Circuit have indicated, characterizing the standard as one of *complexity* versus one of *obviousness* is a purely semantic difference that in no way changes the underlying analysis. *Id.* at 3 ("*Stated differently*, when the subject-matter is less complex . . . .") (emphasis added).

In their Motion for Reconsideration, the Defendants also offer the Declaration of Dr. Alan Angell. ECF No. 55-1. Dr. Angell is a urologist who saw Plaintiff four months after the alleged incident and also reviewed Plaintiff's medical records. Per his Declaration, Dr. Angell has never treated a patient who first saw blood in his urine five days after blunt-force trauma.

To the extent Defendants are attempting to offer Dr. Angell as an expert who will testify at trial, the deadline to disclose such an expert has long since passed. ECF No. 30. To the extent Defendants are introducing Dr. Angell's Declaration simply to bolster the credibility of their existing expert, Dr. Canfield, in showing that the blood in Plaintiff's urine could not have appeared five days after a beating, the Court notes that the credibility of Dr. Canfield is a matter for the jury. In other words, the relative credibility of Dr. Canfield is irrelevant at this stage, and so any attempt to bolster his opinion with another expert is, in short, immaterial.

Defendants' remaining arguments are not appropriate on a motion for reconsideration. Nevertheless, the Court will briefly engage with these arguments.

Defendants argue that, in short, because Plaintiff first told doctors about the blood in his urine "*for the first time five days after a beating*," the injury's cause could not be obvious to an ordinary juror. ECF No. 55-2, at 3 (emphasis in original). Thus, Plaintiff needs an expert to testify about causation before he can testify about his own observation of blood in his urine.

The Court makes a brief observation at the outset. It is not guaranteed that a jury will equate the date that Plaintiff *first told doctors* about the blood with the date that Plaintiff *first*

3

*saw* the blood in his urine. In fact, Plaintiff indicated at a pretrial conference that regardless of when he first told doctors about the blood, he first saw the blood about two or three days after the alleged beating. This is a factual issue that, again, is best left for a jury at trial.

More generally, Defendants build their argument on the mistaken implication that Plaintiff had no other physical problems in the five-day period between the beating and his complaint about blood in his urine. Defendants illustrate this mistake by distorting an example the Court gave regarding a hypothetical plaintiff who was punched in the face. In short, the Court said that if, for instance, a plaintiff was punched in the face and his tooth fell out five days later, this Court would not require the plaintiff to produce an expert to testify about the cause of his tooth falling out. This sort of injury after a punch is obvious enough that a jury could use its own experience in determining causation.

Defendants argue that for the tooth example to actually be analogous to the case at hand, the hypothetical plaintiff would have to sustain a punch, "then go[] four days with no oral pain or bleeding." *Id.* at 4. The plaintiff would have to eat, floss, and brush his teeth "without issue or complaint." *Id.* Again, the implication is that the Plaintiff in this case went five days without any pain, bleeding, issues, or complaints. Then, on day five, he "suddenly" and surprisingly found blood in his urine. *Id.* at 3–4. To the Defendants, the sudden and delayed nature of the injury makes the injury so complex that a jury cannot determine causation without the help of an expert.

The problem with Defendants' distortion of the tooth analogy is that from the face of the Complaint, Plaintiff *did* experience many physical problems in the five days before he complained of blood in his urine. In the Complaint, Plaintiff describes cuts, abrasions, and swellings to his body in the days immediately following the beating. Accordingly, for the plaintiff in the tooth example to be analogous to the Plaintiff here, the hypothetical plaintiff

4

would complain of cuts, abrasions, and swellings to his face in the days immediately following the punch. On the fourth day after the punch, his tooth fell out. That plaintiff would not need an expert to testify about his tooth falling out.

Similarly this Plaintiff—who again complained of a multitude of injuries to his body in the days that followed the alleged beating—does not need an expert to testify about blood in his urine on the fifth day. A jury can assess on these facts, without the help of an expert, whether the blood in Plaintiff's urine was part of a "normal course of events" following an alleged beating. *Id.* at 4.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Reconsideration (ECF No. 55) is DENIED.

SO ORDERED.

DATED:   Rochester, New York
         November 3, 2015

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court